ORIGINAL

District Judge Robert S Lasnik
Magistrate Judge Ricardo S Martinez

FILED ____ ENTERED
____ LODGED ____ RECEIVED

MAR 17 2003 PM

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CV 03-00289 #00000008

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VET BUOT,
Agency # A 27 290 441,

      Petitioner,

v

JOHN ASHCROFT, Attorney General of the United States, SEATTLE INS DISTRICT DIRECTOR, and the UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,

      Respondents

No. C 03-0289L (RSM)

RESPONDENTS' RETURN AND STATUS REPORT AND MOTION TO DISMISS

(Note on Motion Calendar for Consideration on April 11, 2003)

The Respondents (hereinafter "Respondents" or "INS")[1] respectfully file the following memorandum as their Return to the Petition for Writ of Habeas Corpus, as a Status Report on this case, and as Respondents' cross-Motion To Dismiss this case  This memorandum is supported by the certified, paginated copy of the Petitioner's Agency record of proceedings ("A-file"), filed herewith  In the following statement of facts, "L" and "R" citations will refer to documents found on the left side or right side of Petitioner's A-file

---

[1] Pursuant to the Homeland Security Act of 2002, 116 Stat 2135, Pub L 107-296, codified at 6 U S C §§ 101, et seq , INS detention, deportation, and removal functions were transferred from the Department of Justice to the Department of Homeland Security on March 1, 2003  6 U S C § 251 (2002)  (The Executive Office for Immigration Review, Immigration Courts, and the Board of Immigration Appeals will remain part of DOJ  6 U S C § 521 )  Because the habeas petition names INS, because most of the activity discussed herein took place under the aegis of INS, and for ease of reference, Respondents will use "INS" references throughout

RESPONDENTS' RETURN AND STATUS REPORT - 1
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1    1   Immigration and Criminal History

The Petitioner, Vet Buot, (hereinafter, "Petitioner" or "Mr. Buot"), (alias Vet Bout) (R015), date of birth February 1, 1969 (R018), Agency # A27 290 441, is a native and citizen of Cambodia. (R026)

Mr. Buot entered the United States on or about November 15, 1983, at or near San Francisco, California, as a refugee. (R018, R026). Mr. Buot was accorded status of Lawful Permanent Resident (LPR) on or about June 19, 1986 (R026). Pursuant to section 209 of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1159, he was regarded as lawfully admitted to the United States as of the date of his arrival into the United States on November 15, 1983. Mr. Buot has neither applied for nor received U.S. citizenship. (R018)

The INS encountered Mr. Buot on July 11, 1995, while he was incarcerated at the Washington State Corrections Center in Shelton, Washington, following his conviction on July 7, 1995, for Assault First Degree. (R018) Mr. Buot was arrested as a result of his actions on or about May 14, 1995. He was charged with the crime of Assault in the First Degree, for assault with a deadly weapon for striking his victim in the head with an axe. (L015-L017) Mr. Buot pled guilty and was convicted in King County Superior Court #95-1-03640-2. He was sentenced to 105 months in prison, with 24 months of community supervision. (L014) Mr. Buot waived his rights and was interviewed by an INS official on July 11, 1995. (R014)

On July 25, 1995, the INS issued an Order to Show Cause ("OSC") with Notice of Hearing, placing Mr. Buot in deportation proceedings. (R026-025) The INS alleged that Mr. Buot was deportable pursuant to INA section 241(a)(2)(A)(iii),[2] in that he had been convicted of an aggravated felony, to wit, a crime of violence for which a term of imprisonment imposed was 5 years or more.

On July 26, 1995, the INS filed an Immigration Detainer with the Washington State Corrections Center for notification prior to Mr. Buot's release from State custody. (R015)

Mr. Buot was served with the OSC and Notice of Hearing by certified mail on September 1, 1995. (R024)

---
[2] This section is now INA section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii)

RESPONDENTS' RETURN AND STATUS REPORT - 2
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1    On November 6, 1995, Mr. Buot was notified that a hearing was scheduled before an
2    Immigration Judge on December 7, 1995. (L001) At the hearing on December 7, 1995,
3    Mr. Buot admitted the allegations of fact and conceded deportability as charged in the OSC;
4    however, he requested relief from deportation pursuant to INA section 212(c). (See L022) On
5    April 24, 1996, Mr. Buot submitted the Form I-191 in support of his request for this relief.
6    (R022, L022)

7    On May 13, 1996, deportation proceedings were conducted in Seattle Immigration Court,
8    and Immigration Judge ("IJ") Anna Ho ordered Mr. Buot deported from the United States to
9    Cambodia. (L018-L023) Judge Ho pretermitted Mr. Buot's request for a waiver under INA
10   section 212(c). (L018)

11   A copy of the written decision and order was provided to Mr. Buot by letter dated May 21,
12   1996. (L028) The letter advised Mr. Buot that the decision would be considered final, absent
13   any appeal to the Board of Immigration Appeals on or before June 3, 1996. Mr. Buot did not
14   appeal, thus, his removal order became administratively final on June 3, 1996. See 8 C.F.R.
15   § 241.1(b).

16   On October 17, 2002, following his release from state incarceration, Mr. Buot was taken
17   into INS custody. (R043, L037) Mr. Buot was notified via personal service on December 17,
18   2002, that his custody status would be reviewed on or about January 15, 2003. (R033-032) The
19   notice advised Mr. Buot that he may submit any documentation he wished to be reviewed in
20   support of his release. Mr. Buot did not submit anything on his behalf for consideration in this
21   review. (See R035)

22   The INS conducted a custody status review on February 4, 2003. (R039) That same date,
23   the INS issued its Decision by District Director to Continue Detention Upon Expiration of
24   Removal Period. (R041-040) Further, the INS advised Mr. Buot that control of his custody case
25   would be transferred to the INS Headquarters Post Order Detention Unit ("HQPDU"). (R041)

26   On February 10, 2003, Mr. Buot, through counsel, filed the habeas petition currently
27   before this Court. (Dkt. # 3, L37)

28

RESPONDENTS' RETURN AND STATUS REPORT - 3
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

### 2  Removal Efforts

On February 7, 2003, the INS made a request for travel documents to the Consulate General of Cambodia, which was forwarded to the Consulate via Federal Express on February 11, 2003 (R031-029). To date, no response has been received to this request. However, the government of Cambodia has signed a Memorandum of Understanding for repatriation of its nationals. (See Exhibit A.) Based upon this repatriation agreement, Respondents anticipate that a travel document will be issued for Mr. Buot's return to Cambodia in the reasonably foreseeable future and his removal will be effectuated as ordered. (See R043.)[3]

### 3  Custody Review

As previously discussed (supra at 3), the INS conducted a custody review on February 4, 2003. Mr. Buot had an opportunity to request release from custody and to provide any documentation in support of his release, nothing was submitted, however. The INS District Director ordered that Mr. Buot be retained in custody. (R041) This decision of the District Director was provided to Mr. Buot on February 4, 2003, at which time he was also advised that his case would be transferred to the HQPDU for further review. (R040).

On February 28, 2003, the HQPDU issued its "Decision to Continue Detention." (R043) This decision was personally served upon Mr. Buot on March 4, 2003. (R044) Mr. Buot was advised that, pending his removal, he must make reasonable efforts to comply with the order of removal and cooperate with efforts to effectuate his return to Cambodia.

### 5  Lawfulness of Detention

This is a civil immigration-related habeas corpus proceeding brought to challenge the INS's "post-order detention" of Petitioner, pursuant to the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). The Supreme Court held in Zadvydas that (1) 28 U.S.C. § 2241 habeas corpus proceedings are available in District Court as a forum for statutory and constitutional challenges to post-removal-period detention, that (2) the post-removal-period

---

[3] An earlier request for issuance of a travel document was forwarded to the Cambodian Consulate on July 19, 1996 (L029). The Consulate responded on August 5, 1996, declining to issue a travel document for Mr. Buot's return, based upon the fact that no repatriation agreement had been negotiated (L030). Now that such an agreement has been signed, this basis no longer exists.

RESPONDENTS' RETURN AND STATUS REPORT - 4
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

detention statute, INA section 241(a)(6), 8 U S C § 1231(a)(6), read in light of the Constitution's demands, does not permit "indefinite" post-removal-period detention but implicitly limits an alien's detention to a "reasonably necessary" period – presumptively no longer than six months – within which to bring about that alien's removal from the United States, but that (3) if necessary, a deportable alien may be held in confinement beyond six months until it has been judicially determined that "there is no significant likelihood of removal in the reasonably foreseeable future." The Supreme Court made clear in Zadvydas that it is the alien who bears the burden of showing of no significant likelihood of removal "(a)fter this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U S at 701

Petitioner has not made such a showing here. As a threshold matter, the presumptively reasonable six-month period of detention has not yet run, and will not expire until on or about April 17, 2003. Furthermore, Petitioner has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future. To the contrary, based upon the agreement between the United States and Cambodia, Mr Buot's repatriation to Cambodia is highly probable. In addition, based upon the recent success that the INS has had in repatriation Cambodian nationals, Respondents anticipate that a travel document will be issued in the reasonably foreseeable future.

Moreover, Petitioner's continued detention is entirely proper under INS regulations. 8 C F R § 241 4(a)(3) provides for continued detention of "[a]n alien ordered removed who is removable under sections 237(a)(2) or 237(a)(4) of the Act." Petitioner has been convicted of an aggravated felony, as addressed in INA section 237(a)(2), 8 U S C § 1227(a)(2). Likewise, 8 C F R § 241 4(a)(4) also provides for continued detention beyond the removal period of an alien ordered removed if "the alien is unlikely to comply with the removal order or is a risk to the community." The severity of Petitioner's crime, when considered along with the attitude of indifference he has displayed while in detention, and his lack of roots, employment prospects, or community support within the United States, tend to indicate that he is a flight risk and that his

RESPONDENTS' RETURN AND STATUS REPORT - 5
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

1  release may well place the community at risk, as the INS has concluded  See 8 C F R § 241 4(e)
2  & (f)  (R035, R041)  Mr Buot's continued detention is entirely proper and lawful
3    6  Conclusion and Motion To Dismiss
4    Respondents respectfully request that, based upon the foregoing, Petitioner's habeas
5  corpus petition be denied and dismissed  We so move

7    Dated this 17th day of March, 2003.

    Respectfully submitted,

    JOHN McKAY
    United States Attorney

    /s/ Kirsten M. Schimpff
    KIRSTEN M SCHIMPFF, WSBA# 31299
    Assistant United States Attorney

RESPONDENTS' RETURN AND STATUS REPORT - 6
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

That on March 17th, 2003, she caused copies of the *Respondents' Return and Status Report and Motion To Dismiss* to be served upon the individual(s) hereinafter named by placing said copies in the United States mail, postage pre-paid, addressed as follows

> Jay W. Stansell
> Assistant Federal Public Defender
> 1111 Third Avenue, Suite 1100
> Seattle, WA 98101-3207

DATED this 17th day of March, 2003

*/s/ Sheila Sowecke*
SHEILA SOWECKE,
Legal Assistant
United States Attorney's Office

RESPONDENTS' RETURN AND STATUS REPORT - 7
C03-0289L (RSM)

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101-3903
(206) 553-7970

# EXHIBIT A

MEMORANDUM BETWEEN THE GOVERNMENT OF THE UNITED STATES
AND THE ROYAL GOVERNMENT OF CAMBODIA FOR THE
ESTABLISHMENT AND OPERATION OF
A UNITED STATES-CAMBODIA JOINT COMMISSION
ON REPATRIATION

The Government of the United States of America (United States) and the Royal Government of Cambodia (Cambodia)

Recognizing their mutual international obligations to accept the return of their nationals in an orderly, prompt, and humane manner;

Desiring to establish and advance the development of normal immigration relations, in accordance with generally recognized principles of international law and practice;

Desiring to put into effect the principles adopted by both States in the Joint Statement made in Phnom Penh on April 27, 2000, and subsequently endorsed by order of the Royal Government of Cambodia on June 21, 2000; and

Desiring to further enhance cooperative and friendly relations between the two States on the basis of respect for each State's sovereignty, and on the basis of equality and mutual interest;

Hereby establish the following Principles and Objectives which are intended to govern the establishment and operation of a Joint Commission on Repatriation:

Fundamental Principles

1. Each repatriation request should be considered and decided individually, on a case-by-case basis, without preconditions.

2. The United States and Cambodia should act in a spirit of mutual cooperation in determining the nationality of an individual and in all other matters pertaining to repatriation.

3. The United States and Cambodia are committed to the primary objective of effecting the return of each other's nationals to their home State, taking into account the humanitarian and compassionate aspects of each case and the principles of internationally recognized human rights.

4. Nothing in this document imposes, or should be construed to impose, any legal or financial obligations on either State.

EXHIBIT "A"

### Composition of the Joint Commission and Scheduling of Meetings

1. The Joint Commission on Repatriation (Commission) should be comprised of four (4) members from the United States and four (4) from Cambodia, representing the ministries of immigration, foreign affairs, and justice, or their equivalent, of such State.

2. The Commission should meet twice each year, or as mutually agreed, at times and locations to be mutually determined.

### Procedures/Modalities for Considering Repatriation Requests

1. Each State should designate a Central Authority for the receipt and initial screening of repatriation requests and related matters.

2. The Commission should be the primary forum for the discussion and resolution of repatriation policy and individual repatriation requests refused by the Central Authority of the requested State.

3. Unless otherwise agreed, all repatriation requests shall be initially sent to the Central Authority of the requested State and should include:

   a. a copy of the final order of removal issued by the competent authority of the requesting State;
   b. a copy of the individual's passport, if available, or other documentation evidencing the identity and biographical history of the individual and his or her status as a national of the receiving State;
   c. a copy, if any, of any available record of the individual's criminal violations in the requesting State;
   d. two identical photographs of the individual and his or her fingerprints and medical history, if available;
   e. any additional information that the Central Authority of the requested State deems necessary.

4. Upon receiving and reviewing a repatriation request, the Central Authority of the requested State may request the assistance and resources of the Central Authority of the requesting State in conducting any additional interview of the individual and verifying any information contained in the request.

5. The Central Authority of the requested State should respond in writing to the Central Authority of the requesting State not later than 30 days from the date of receipt of the request, unless otherwise agreed. In all cases of refusal, the Central Authority of the

requested State should state its reasons in writing and should refer the request to the Commission for consideration. The Commission shall consider all referred requests at its next scheduled meeting.

6. When the Central Authority of the requested State accepts a repatriation request it should simultaneously issue a travel document, valid for at least 60 days, to permit the individual's return. The requesting State should expeditiously make the appropriate arrangements for the return of the individual to the requested State, and should inform the Central Authority of the requested State at least seven (7) business days in advance of the return itinerary and any special considerations, such as medical, law enforcement, or escort matters.

7. Unless otherwise agreed, all costs of repatriation, including air transportation and escort services, should be borne exclusively by the requesting State.

Signed at Phnom Penh on March 22, 2002, in duplicate, in both the English and Khmer languages with identical value.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA

FOR THE ROYAL GOVERNMENT
OF CAMBODIA

Kent M. Wiedemann
Ambassador of the
United States of America

Lt. Gen. Em Sam An
Secretary of State
Ministry of Interior

3